NOT DESIGNATED FOR PUBLICATION

No. 124,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of G.P.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOAN M. LOWDON, judge. Opinion filed October 7, 2022. Affirmed.

*Andrew E. Werring*, of Farris, Fresh, and Werring Law Office, LLC, of Atchison, for appellant natural father.

*Ashley Hutton*, assistant county attorney, and *Todd Thompson*, county attorney, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: The natural father (Father) of G.P. (born in 2015) timely appeals from the district court's termination of his parental rights, arguing the district court's finding of unfitness was unsupported by the evidence. Following a careful review of the record, we find the evidence as discussed below reflects clear and convincing evidence to support the district court's order to terminate Father's parental rights. We affirm.

FACTS

After a search warrant was issued, law enforcement conducted a search of Father's and Mother's home, finding the home extremely cluttered with several dangerous items that could harm a child. Among the items were various drugs and drug paraphernalia,

1

including methamphetamine, marijuana, a glass smoking pipe, syringes, and loose pills in areas of the house where G.P. could access them. In July 2019, the State filed a petition alleging G.P. to be a child in need of care (CINC). Mother and Father subsequently entered no-contest statements to the State's CINC petition, and the district court adjudicated G.P. a child in need of care. G.P. was placed in the custody of the Secretary of the Department for Children and Families (DCF), who then placed him in the care of his maternal grandmother (Grandmother) and her husband.

In October 2019, the district court approved a reintegration plan to be supervised by Cornerstones of Care case manager Kristin McGlinn. The primary concerns were for Mother and Father to address their substance abuse issues by obtaining drug and alcohol evaluations, obtaining the recommended treatment, maintaining sobriety, submitting negative urinalysis (UA) samples when requested, and correcting the safety and drug-related issues in their home.

Both parents struggled with their substance abuse issues and, as of February 2020, refused the caseworkers access to their home to determine if the conditions of the house had been corrected. Progress by the caseworkers to help with the reintegration plan was slowed due to the COVID-19 pandemic but not stopped. In August 2020, the district court held a review hearing and determined progress toward reintegration was inadequate due in large part to the parents' continued substance abuse issues but left reintegration as a viable goal. In November 2020, the district court held another review hearing. McGlinn reported Father completed a drug and alcohol evaluation earlier that month; however, Father failed to submit several UAs when requested and tested positive for methamphetamine in September 2020.

Father completed in-patient drug treatment in January 2021; however, he subsequently failed to submit UAs when requested and largely failed to stay in contact with McGlinn. The district court held a permanency hearing on January 26, 2021, and

found reintegration was no longer a viable goal. The State filed its motion to terminate parental rights in March 2021. Because of calendar-related issues, the district court split the termination hearing over several days, hearing evidence on May 12, 2021; May 27, 2021; and June 24, 2021.

During the termination hearing, the State presented evidence from McGlinn and her supervisor, Allycia Strother, as well as Grandmother's husband. Collectively, McGlinn's and Strother's testimony reflected Father frequently failed to submit requested UAs, Father failed to follow through on the vast majority of his case plan tasks, and the caseworkers were unable to inspect Father's and Mother's home because they refused to allow the caseworkers to come inside. Father, based on his failure to submit requested UAs, missed 37 potential visits with G.P. With all of his missed visits, Father never progressed to the point of having unsupervised visits.

Although the caseworkers were unable to inspect Father's home, Grandmother's husband visited Father's home in May 2021. He noted there was clutter, filth, and drug paraphernalia throughout the house and took pictures, which were admitted at the termination hearing. Father also continued to have other pending legal issues as the case progressed. He was convicted of driving without an interlock device in January 2021 and was arrested for the same offense following the May 12, 2021 hearing.

The district court found Father unfit based upon the following statutory factors:

- K.S.A. 38-2269(b)(3) ("the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child");
- K.S.A. 38-2269(b)(7) ("failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family");

3

- K.S.A. 38-2269(b)(8) ("lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child");

- K.S.A. 38-2269(b)(9) ("whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection [c] apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home");

- K.S.A. 38-2269(c)(3) ("failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home"); and

- K.S.A. 38-2269(c)(4) ("failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay").

The district court further found Father failed to overcome the rebuttable presumption of unfitness under K.S.A. 60-414(a) and K.S.A. 38-2271(a)(5) because G.P. had been in a court-ordered out-of-home placement for one year or more during which time Father substantially neglected or willfully refused to carry out a reasonable, court-approved reintegration plan. The district court found Father's conduct or condition rendering him unfit was unlikely to change in the foreseeable future. Accordingly, the district court held termination of Father's parental rights was in G.P.'s best interests. Mother does not participate in this appeal. Additional facts are set forth as necessary.

4

*Standard of Review and Applicable Legal Principles*

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014). Clear and convincing evidence is evidence sufficient to establish that the truth of the facts asserted is highly probable. "Clear and convincing evidence is an 'intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt.' [Citation omitted.]" *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018).

As provided in K.S.A. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, we view all the evidence in a light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

Upon making a finding of unfitness of the parent, the district court must "consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and

emotional health of the child." K.S.A. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusting the district court to act within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. We review a district court's best-interests determination for an abuse of discretion,

> "which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

Father, as the party asserting the district court abused its discretion, bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

*Discussion*

Father advances several factual arguments without citation to the record on appeal. Under Supreme Court Rule 6.02(a)(4) (2022 Kan. S. Ct. R. at 35), when a party fails to support a factual statement with pinpoint citation to the record on appeal, we may presume the assertion is unsupported by the record. Father also fails to meaningfully address the district court's reliance on the presumption of unfitness based on G.P. being in an out-of-home placement for 15 months or more with little to no progress toward reintegration. See K.S.A. 38-2269(b)(9). At best, the point is incidentally mentioned as a continuation of his arguments regarding a lack of communication with the caseworkers and his progress toward addressing drug and alcohol issues. But a point raised incidentally in a brief and not argued therein is deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). And issues not adequately briefed are

deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Because Father does not properly address some additional or alternative bases for the district court's decision, we find he cannot show error on appeal. See *In re Marriage of Williams*, 307 Kan. at 977 (issues not adequately briefed deemed waived or abandoned). Here the district court's findings are supported by the evidence. The district court properly determined Father was unfit and his conduct or circumstances causing his unfitness were unlikely to change in the foreseeable future; therefore, termination of Father's parental rights was in G.P.'s best interests. We now turn to address in more detail each statutory factor the district court relied upon to find Father's parental rights should be terminated.

*Father's drug use*

The district court found Father unfit due to his repeated use of drugs and alcohol, which rendered him incapable of caring for G.P. See K.S.A. 38-2269(b)(3). Initially, Mother's and Father's drug use brought the issues of this case to the attention of law enforcement. In the process of executing a search warrant, law enforcement found drugs and drug paraphernalia in the home easily accessible to G.P. The issues revolved around Mother arranging or attempting to arrange drug sales while Mother and Father continued to reside together. Father was a recovering methamphetamine addict who previously was imprisoned for selling methamphetamine. Father missed 46 requested UAs during the pendency of this case, resulting in him missing most of his visitation opportunities with G.P. Father also had nine positive UAs between October 2019 and September 2020.

While Father relies on the fact he attended in-patient drug treatment, he fails to acknowledge he did not timely complete this treatment. The record reflects it took Father nearly one and a half years after this case began to attend treatment. Then Father still

failed to submit UAs as requested after he completed in-patient drug treatment in January 2021. Father last submitted a negative UA in February 2021; he missed four requested UAs in May 2021 and failed to comply when asked to submit an additional sample in June 2021 after the sample he submitted was not in the correct temperature range. Father also told Strother and McGlinn he planned to work out of state beginning in February 2021, but he failed to follow up with them to establish where he was staying and to set up out-of-state drug testing. Father never completed any UAs while he was out of state.

Grandmother's husband's testimony also reflects during his visit to Father's home in May 2021, there was drug paraphernalia throughout the house. The pictures he took were admitted at the termination hearing. Clear and convincing evidence supports the district court's finding that Father's continued drug use rendered him incapable of caring for G.P.

*Failure of reasonable reintegration efforts*

The district court found Father failed to provide the opportunity for G.P. to reintegrate into his home despite reasonable efforts by appropriate public or private agencies. See K.S.A. 38-2269(b)(7). While Father claims there was a lack of communication from the caseworkers, there was evidence to the contrary. McGlinn initially met with Father by telephone in November 2019. McGlinn then had an in-person case plan meeting with Mother and Father in April 2020, where she explained the various case plan tasks. McGlinn explained the most important task was addressing the parents' substance abuse issues. McGlinn testified that when meeting with Mother and Father at the outset of the case, she talked to them about their substance abuse issues. Both denied there were issues and even denied the use of illegal drugs.

During a later case plan meeting with Mother and Father, the caseworkers offered monthly meetings to assist with case plan tasks. Father was requested to submit UAs in order to have visits with G.P., which Father frequently failed to do, resulting in Father missing 37 visits with G.P. The caseworkers also referred Father to drug and alcohol treatment, which Father completed after considerable delay. Upon Father's completion of in-patient drug treatment, McGlinn had no indication Father continued with any kind of outpatient treatment or other appropriate support. Father's contact with McGlinn was limited to the two to four supervised in-office visits with G.P. between February 2021 and April 2021.

The evidence reflects Father maintained little to no contact with his caseworkers and failed to provide them with his contact information. Strother testified about her concerns with Father working out of state, he never contacted her, and she never spoke with him about it. Father failed to get in contact with McGlinn regarding his missed UAs between February 2021 and May 2021. Specifically, Father was told he needed to make arrangements to submit UAs while working out of state, but he failed to contact McGlinn or anyone in her office to do so. Following Father's completion of drug treatment, McGlinn often asked Mother to have Father call her, but she had no response. Despite these concerns being presented in Strother's and McGlinn's testimony at the May 27, 2021 hearing, Father still failed to contact Strother or McGlinn prior to the next hearing on June 24, 2021.

The district court concluded Father's reluctance to acknowledge and address his substance abuse issues was a considerable impediment affecting his ability to successfully progress toward reintegration with the assistance of his caseworkers. To the extent Father argues there was not enough communication from the caseworkers, he is essentially asking us to reweigh the evidence, which we cannot do. See *In re B.D.-Y.*, 286 Kan. at 705. The district court's finding on this point is supported by clear and convincing evidence.

9

*Lack of effort by Father to adjust his conduct, condition, or circumstances*

Based on Father's conduct, the district court found there was a lack of effort by Father to adjust his conduct, circumstances, or conditions to meet G.P.'s needs. See K.S.A. 38-2269(b)(8). The district court noted Father's continued issues with drug use through the pendency of the case, as well as the fact Father was arrested in May 2021 for failing to comply with his ignition interlock requirement. Father had also previously been convicted for driving without an ignition interlock device in January 2021. This case began with drug-related issues. Father largely failed to timely acknowledge or address those issues. And even after completing in-patient drug treatment, Father continued to miss requested UAs without following up with his caseworkers.

Further, his ignition interlock violations reflect Father failed to comply with additional legal matters stemming from his substance abuse issues. Because of his substance abuse issues—or failure to fully address the issues—Father was unable to have regular visitation with G.P. Through the entirety of the case, Father's caseworkers were unable to perform a walk-through of Father's home to determine whether the safety concerns observed in 2019—clutter, drugs, drug paraphernalia, and other dangerous items in the house—had been addressed. But the record reflects the conditions had not changed because of the photos taken by Grandmother's husband when he visited the home in May 2021. The photos reflected the filth, clutter, and drug paraphernalia remained in the home. Clear and convincing evidence supports the district court's conclusion Father failed to adjust his conduct, condition, or circumstances to meet G.P.'s needs.

*Failure to carry out a reasonable, court-approved reintegration plan*

The district court likewise soundly concluded Father failed to carry out a reasonable court-approved reintegration plan. See K.S.A. 38-2269(c)(3). Father's case plan tasks were as follows:

- submit UAs as requested by his caseworkers;
- in the event of a positive UA, complete a RADAC assessment and follow all recommendations;
- maintain employment and provide proof of employment to his caseworkers;
- provide proof of housing and utilities to his caseworkers;
- resolve all pending legal issues;
- refrain from talking about the case and related issues with G.P.;
- attend a parenting class and submit proof of attendance to his caseworkers;
- participate in family therapy and follow all recommendations;
- provide a safe home free from clutter, drugs, drug paraphernalia, or other hazards;
- provide proof of insurance, valid driver's license, and current registration to his caseworkers before driving with G.P.;
- have background checks conducted for anyone who came into contact with G.P.; and
- maintain monthly contact with his caseworkers and inform them of any changes in his phone number.

Given the list of tasks to follow, the district court correctly noted Father completed some of his case plan tasks—namely, attending in-patient drug treatment—but most tasks were never accomplished by Father. The record reflects Father:

11

- submitted several positive UAs throughout the pendency of the case;
- failed to submit many others which were requested;
- had little contact with his caseworkers and failed to provide them with proof of employment;
- continued to have unresolved legal issues and committed new crimes during the pendency of this case;
- maintained his home in an unsafe and unsanitary condition with drug paraphernalia scattered about the house as of a month prior to the termination hearing;
- never allowed the caseworkers to perform a walk-through of his home; and
- failed to attend an appropriate parenting class and failed to attend individual or family therapy.

Clear and convincing evidence supports the district court's conclusion Father failed to carry out a reasonable plan for reintegration of G.P. back into his home.

*Failure to pay a reasonable portion of the cost of substitute care*

The district court further held Father was unfit based upon his failure to pay a reasonable portion of the cost of G.P.'s physical care and maintenance based on Father's ability to pay. See K.S.A. 38-2269(c)(4). We have been unable to find a support order in the relevant volumes of the record or where the district court made findings addressing Father's ability to pay some portion of the cost of substitute care. We find the district court erred in its finding; however, that error does not negate the other factors the district court relied upon to find Father unfit.

*G.P.'s extended out-of-home placement*

The district court also found Father unfit based on the fact G.P. had been in a court-ordered out-of-home placement for at least 15 of the last 22 months due to actions or inactions of Father, see K.S.A. 38-2269(b)(9), and one or more factors under K.S.A. 38-2269(c) applied. The district court further held the rebuttable presumption of unfitness applied under K.S.A. 60-414(a) and K.S.A. 38-2271(a)(5) based on Father's substantial neglect or willful refusal to carry out a reasonable, court-approved reintegration plan.

It is undisputed G.P. had been in DCF custody from August 28, 2019, through the date of the district court's written termination order, October 12, 2021, and the reasons for this placement were due to Father's actions or inactions. Further, at least one of the factors under K.S.A. 38-2269(c) applied—Father's failure to carry out a reasonable court-approved reintegration plan. See K.S.A. 38-2269(c)(3). Arguably, Father's failure to maintain consistent visitation with G.P. would constitute another factor under K.S.A. 38-2269(c)(2). However, given the brevity of the district court's findings on this point, we decline to rely upon it to uphold the district court's termination of Father's parental rights.

The district court also correctly determined Father substantially neglected or willfully failed to carry out a reasonable, court-approved reintegration plan, was presumptively unfit, and failed to rebut the presumption. Father advances no persuasive arguments on how the district court erred in considering the fact G.P. had been in a lengthy out-of-home placement.

*G.P.'s best interests*

Based on the findings above, the district court determined termination of Father's parental rights was in G.P.'s best interests. As a preliminary matter, we deem Father's best-interests argument is waived or abandoned due to improper briefing. See *In re*

*Marriage of Williams*, 307 Kan. at 977 (issues not adequately briefed deemed waived or abandoned). Father offers a conclusory two-sentence argument with no citation to the record, no citation to pertinent authority, and no meaningful explanation of his point, asserting:

> "The testimony in this case was that all of the requirements of the reintegration plan could have been completed not only in the foreseeable future but, it would appear, in the near future. There was no evidence presented to support a finding that [Father's] conduct or condition prevented him from providing proper care for [G.P.] *in the foreseeable future*."

Notwithstanding the fact Father fails to cite to the record to support his claims about the testimony in this case, he is incorrect about what the evidence in the record reflects. Father continued to have substance abuse issues, failed to carry out the majority of his case plan tasks, and the conditions of the home leading to G.P.'s removal continued to exist less than a month before the termination hearing. The biggest impediments to Father's reintegration efforts were his failure to submit negative UAs as requested and to maintain contact with his caseworkers. Father identifies no error of fact or law underlying the district court's termination decision, nor has Father shown the district court's decision was otherwise unreasonable. Accordingly, Father has not met his burden to show the district court abused its discretion. See *Northern Natural Gas Co.*, 296 Kan. at 935; *In re R.S.*, 50 Kan. App. 2d at 1115-16.

The district court's findings that Father was unfit and his unfitness was likely to continue for the foreseeable future were properly supported by clear and convincing evidence. Accordingly, because it considered G.P.'s physical, mental, and emotional well-being, the district court's decision terminating Father's parental rights was in the best interests of G.P. and was a sound exercise of the court's discretion. See K.S.A. 38-2269(g)(1); *In re R.S.*, 50 Kan. App. 2d at 1115-16.

Affirmed.